United States District Court
Southern District of Texas
**ENTERED**
March 15, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MELISA A. SYLVESTER, | § § § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-23-4085 |
| BJORN M. NILSSON, | § § § | |
| Defendant. | § § § § | |

**MEMORANDUM AND ORDER**

Melisa A. Sylvester and Bjorn M. Nilsson were married in Malaysia. In 2017, a career opportunity arose for Nilsson in the United States. The couple and their two-year-old son moved to the United States. Sylvester, reluctant to leave her home country and medical practice, secured certain written promises from Nilsson, including that Nilsson would pay her half of his transfer bonus, cover Sylvester's and her son's living expenses, pay Sylvester's college tuition, lease an "SUV or a Porsche Cayenne" for Sylvester's use, and move the family to Australia by 2022.

In America, Sylvester and Nilsson had a second child, but the marriage fell apart. The parties divorced. In the divorce proceedings, the parties accused each other of domestic violence and abuse. Nilsson obtained a protective order against Sylvester based on the family court's finding that Sylvester had committed family violence.

Sylvester, representing herself, then brought this action against Nilsson. She alleges that Nilsson trafficked her into the United States against her will, tortured and enslaved her, attempted to kill her "multiple times," "habitual[l]y" and "impuls[ively]" strangled her, and physically abused their son and threatened to kill him "over 40 times." (Docket Entry No. 1-1 at 3–4). She

alleges that she feared that if she tried to escape, Nilsson would have her deported, harm their son, or take their children to his home country of Sweden. (*Id.* at 4).

Nilsson moved for judgment on the pleadings. (Docket Entry No. 7). Sylvester responded. (Docket Entry No. 8). The court heard argument, and now grants the motion. The reasons are set out below.

**I.      Background**

In July 2014, Melisa A. Sylvester and Bjorn M. Nilsson married in Malaysia. (Docket Entry No. 1-1 at 9; Docket Entry No. 7-9 at 3). Sylvester alleges that Nilsson accepted a job transfer to America in 2017 without consulting her. (Docket Entry No. 1-8 at 1, 4). She alleges that she did not want to leave her home country and her medical practice, but was "coerced," "forced," and "deceived" into doing so. (Docket Entry No. 1 at 2). Nilsson's alleged means of forcing Sylvester to emigrate was a written agreement, titled "Marital Agreement Between Husband and Wife." (Docket Entry No. 1-2). Sylvester refers to the Marital Agreement as the "Human Trafficking Contract." (Docket Entry No. 1 at 2).

The Marital Agreement states that Sylvester and Nilsson had "been living together in Malaysia since marriage and have a two year old son." (Docket Entry No. 1-2 at 4). It states that Nilsson had "been offered a transfer posting by his employer to be based in the United States of America," and that Sylvester agreed to "follow him to the United States of America . . . but as she has to give up her medical practice in Penang, Malaysia and would not be able to practice in the USA and thus be financially dependent on the Husband, both the Husband and Wife as SECURITY for the Wife and family have agreed to the following terms below: —

1. The Husband and the Wife will open a joint salary account in the USA and also in Malaysia (in Ringgit Malaysia and US Dollars) with instructions to the Husband's employer to deposit his monthly/weekly salary into either or both of this account.

2

2. The Husband shall deposit a sum equivalent to 50% of the transfer bonus he will get, for relocating to the USA, to the Wife into an account of her choice.

   This sum of 50% is estimated to be about USD 54,500.00 less tax and shall be deposited into the Wife's personal account as follows:—

   (i)  A sum of RM 20,000.00 to be deposited prior to the relocation of the Wife to the USA; and

   (ii) A sum of RM 80,000.00 to be deposited subsequent to the relocation of the Wife to the USA and on the Husband obtaining his 1st salary estimated to be around the end of June 2017.

3. Upon the arrival and during the Wife's stay in the USA, all living expenses shall be borne by the Husband solely.

4. During the stay in the USA, the Husband shall employ a maid of Asian origin to assist the Wife with the household chores.

5. In the event that the Wife wants to continue her studies in the USA, the Husband shall assist in securing her studies by paying her enrolment fees and all other incidental fees and hereby guarantees to finance the Wife through her studies.

6. The Husband shall lease a car for the Wife's use immediately upon her arrival in the USA, which model shall be a SUV or a Porsche Cayenne or any other car of similar bearing.

7. The Husband shall lease a house for the family to reside and the Wife shall absolutely decide the location of the house to be rented in the USA and the school that their son [] will attend in the USA.

8. The Husband undertakes that after serving for two (2) years and six (6) months in the USA, the Husband the Wife and the son ('the family') shall move back to a location in South East Asia Being either Malaysia, Singapore or Australia and shall remain there for a further three years and subsequently, if in Malaysia or Singapore, will move to Australia in the year 2022.

9. The Husband shall deposit a fixed sum of US Dollars 1,500.00 every month into the Wife's personal savings account for her personal use.

10. The Husband shall assist the Wife to find an investor/director to operate/run LISA ANNE Clinic in Penang, Malaysia during the Wife's stay in the USA.

(*Id.* at 5–6).

Sylvester alleges that after the family moved to America in June 2017, Nilsson subjected her to:

>torture, multiple life threatening physical aggravated assaults including with breath impeded, emotional, psychological, immigration, financial abuse and exploitation with immigration, financial claims exploitation, reproductive exploitation with pressured child bearing . . . , used for child thriving, involuntary servitude, forced domestic labour and slavery held against her will and confined including confiscate and seize of passport and immigration documents, denial of liberty, sleep, movement, dignity, necessities and rescue . . . severe obliteration of sense of self and mind and dehumanization of the gravest nature.

(Docket Entry No. 1 at 2). She alleges that Nilsson tried to kill her "multiple times," strangling her until she could not breathe. (Docket Entry No. 1-1 at 3). She also alleges that Nilsson physically abused their son and threatened to kill him "over 40 times." (*Id.*). She alleges that she did not flee from the situation because she feared that Nilsson would deport her, harm her children, or take them to Sweden. (*Id.* at 4). According to Sylvester, the promises Nilsson made in the Marital Agreement to "lure" her into the United States "were nothing more than deceptive lies." (*Id.* at 3).

In December 2018, Nilsson filed for divorce in the 311th Judicial District Court of Harris County, Texas. *See Sylvester v. Nilsson*, No. 14-19-00901-CV, 2021 WL 970924, at *1 (Tex. App.—Houston [14th Dist.] Mar. 16, 2021, no pet.).[1] Nilsson also applied to the 280th Judicial District Court of Harris County, Texas for a protective order against Sylvester on family-violence grounds. (Docket Entry No. 7-3).

---

[1] The procedural history in the family courts is not adequately reflected in the limited record before the court on Nilsson's motion for judgment on the pleadings. Because that history is material to Nilsson's *res judicata* argument, the court takes judicial notice of the procedural facts set out in *Sylvester v. Nilsson*, No. 14-19-00901-CV, 2021 WL 970924 (Tex. App.—Houston [14th Dist.] Mar. 16, 2021, no pet.). *See Callan v. Deutsche Bank Tr. Co. Americas*, 11 F. Supp. 3d 761, 765 (S.D. Tex. 2014), *amended*, 93 F. Supp. 3d 725 (S.D. Tex. 2015) ("A court may take judicial notice of documents filed in another court to establish the fact of such litigation and related filings, but it may not take judicial notice of the factual findings of another court.") (citing *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830 (5th Cir.1998)).

In January 2019, the parties signed a mediated settlement agreement. *See Sylvester*, 2021 WL 970924, at *1. The settlement agreement provided that Nilsson would non-suit his application for a protective order, Nilsson would be appointed sole managing conservator for the children, and Sylvester would have supervised visitation rights. *Id.*

After Nilsson non-suited his application for protective order, Sylvester moved the 311th court to vacate the settlement agreement on the ground that, on the day it was signed, she was "confused," "very ill," "extremely stressed," and "did not want to sign." (Docket Entry No. 7-1 at 2). She also argued that the settlement agreement should be set aside under Texas Family Code § 153.0071(e-1) because her ability to make decisions had been impaired by Nilsson's violence against her. (*Id.* at 3). She asked the court to appoint her the sole managing conservator for the children and to order Nilsson to comply with the Marital Agreement, including by paying Sylvester half of his transfer bonus, her living expenses, educational expenses, and the costs of maid service. (Docket Entry No. 7-2 at 3, 6).

In May 2019, Nilsson again applied for a protective order from the 280th court. (Docket Entry No. 7-3). Sylvester also applied for a protective order. (Docket Entry No. 7-4). After a hearing, the 280th court found that Sylvester had committed family violence and was likely to do so in the future. (Docket Entry No. 7-3 at 3). The 280th court found that Nilsson had not committed, and was not likely to commit, family violence. (Docket Entry No. 7-4 at 2). Based on these findings, the 280th court entered a protective order prohibiting Sylvester from, among other things, communicating with Nilsson or the children and coming within 400 feet of Nilsson's home or work or the children's school or childcare facility. (Docket Entry No. 7-3 at 4–5). The protective order also required Sylvester to pay Nilsson's attorneys' fees and costs for obtaining the

order. (*Id.* at 6). The 280th court denied Sylvester's motion for a protective order. (Docket Entry No. 7-4).

Sylvester appealed from the protective order, arguing that it conflicted with the mediated settlement agreement and that the family-violence findings were not supported by the evidence. *Sylvester*, 2021 WL 970924 at *1. The court of appeals affirmed, holding that the settlement agreement did not bar Nilsson from pursuing a second application for a protective order "should he believe circumstances warranted it," and that "the evidence is legally sufficient to support the trial court's finding that Sylvester committed family violence" and "is likely to commit family violence in the future." *Id.* at *4–5.

In February 2023, Sylvester moved the 311th court to enforce the Marital Agreement by ordering Nilsson to pay her living expenses, "enrollment fees and all other incidental fees related to [her] academic studies," and an additional $1,500 per month. (Docket Entry No. 7-8). The record does not reflect that Sylvester's motion was ruled upon.

In October 2023, the 311th court entered a final decree of divorce, dissolving the marriage "on the ground of insupportability." (Docket Entry No. 7-9 at 3). The 311th court appointed Nilsson as sole managing conservator and Sylvester as possessory conservator for their children. (*Id.* at 4). The final decree of divorce did not reference the Marital Agreement in its division of the marital estate. (*Id.* at 23–29). The final decree stated that "all relief requested in this case and not expressly granted is denied." (*Id.* at 34).

A few days after the final divorce decree was filed, Sylvester filed this pro se action. (Docket Entry No. 1). Sylvester brings claims under the Victims of Trafficking and Violence Protection Act of 2000, 18 U.S.C. § 1595, Pub. L. No. 106–386, 114 Stat. 1464; the Alien Tort Claims Act, 28 U.S.C. § 1350, 64 Stat. 934; 18 U.S.C. § 1028A; 18 U.S.C. § 2261; 18 U.S.C. §

1595; the Trafficking Victims Protection Reauthorization Acts of 2005, Pub. L. No. 109–164, and 2008, Pub. L. No. 110-457; the Torture Victim Protection Act of 1991, 18 U.S.C. § 2340A, Pub. L. No. 102–256; and the Thirteenth Amendment to the United States Constitution. (*Id.* at 3–4). She also brings common-law claims for breach of contract, quasi contract, unjust enrichment, fraud, negligent infliction of emotional distress, "irreparable injury," and "hostile environment." (*Id.* at 4–5). Sylvester seeks compensatory damages, restitution, and punitive damages. (*Id.* at 5).

In October 2023, Sylvester moved for an emergency temporary restraining order, seeking a stay of the proceedings in the 311th court, the imposition of international travel restrictions on Nilsson and the children, disarmament of Nilsson, a freeze of Nilsson's bank accounts, "protection and prohibition injunctions against physical and psychological threats and actions," and "protection and prohibition against independent immigration stability interference." (Docket Entry No. 4). The court denied Sylvester's motion because she had not identified a basis in law for the requested relief. (Docket Entry No. 5).

In December 2023, Nilsson moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), or alternatively to dismiss under Rules 12(b)(1) and (6), or alternatively for a more definite statement under Rule 12(e). (Docket Entry No. 7). Sylvester has filed a response. (Docket Entry No. 8). The court heard argument on the motion. (Docket Entry No. 15). At the hearing, the court advised that it would take steps to see whether counsel could be appointed to represent Sylvester. The court assigned a lawyer to review the case and determine whether counsel should be appointed to prosecute the case on Sylvester's behalf. The lawyer concluded that counsel should not be appointed, and the court agrees. Civil litigants are not entitled to counsel, and Sylvester has shown the ability to present the facts and arguments relevant to her claims without a lawyer.

Based on the pleadings, the record, the motion, response, oral argument, and the applicable law, the court grants Nilsson's motion. (Docket Entry No. 7). A separate dismissal order will follow. The reasons are set out below.

## II. The Legal Standard

Rule 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." FED. R. CIV. P. 12(c). "The difference between a motion to dismiss pursuant to Rule 12(b)(6) and a motion pursuant to Rule 12(c) is a matter of timing." *In re Morrison*, 421 B.R. 381, 388 (Bankr. S.D. Tex. 2009). Before an answer has been filed, Rule 12(b)(6) is the proper procedural vehicle. Once pleadings are closed—*i.e.*, ordinarily "upon the filing of a complaint and an answer," 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1367 (3d ed. 2004)—the proper vehicle is Rule 12(c), *In re Morrison*, 421 B.R. at 388. Either way, the standard is the same. *See Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S.

at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (alterations omitted) (quoting *Twombly*, 550 U.S. at 558).

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

A motion to dismiss under Rule 12(b)(1) calls into question the district court's subject-matter jurisdiction. A movant may demonstrate a lack of jurisdiction from (1) the face of the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts. *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004). The party invoking the court's jurisdiction carries the burden of demonstrating that jurisdiction exists. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

The court liberally construes the filings of a pro se litigant. *Coleman v. United States*, 912 F.3d 824, 828 (5th Cir. 2019). "[A] pro se complaint, however inartfully pleaded, must be held to

9

less stringent standards than formal pleadings drafted by lawyers." *Id.* However, "pro se plaintiffs must still plead factual allegations that raise the right to relief above the speculative level." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (per curiam).

### III. Analysis

Nilsson argues that Sylvester's claims should be dismissed because: (1) they are precluded by prior court rulings; (2) the court lacks subject matter jurisdiction over many of her claims because they are based on "bare criminal statutes" without private rights of action; and (3) Sylvester fails to state any claims upon which relief can be granted. (Docket Entry No. 7). Alternatively, Nilsson argues that Sylvester should be ordered to replead under Rule 12(e) because her "vague allegations" make it "all but impossible for Nilsson to reasonably prepare a response to [her] complaint." (*Id.* at 9–10).

The court agrees with Nilsson that Sylvester has no private right of action for some of her claims, and that her remaining claims are barred by the doctrine of *res judicata*. To the extent Sylvester asserts any claims not subject to preclusion, she fails to state a claim upon which relief can be granted.

### A. Private Rights of Action

Sylvester asserts several claims under title 18 of the United States Code, which governs criminal offenses. A private litigant cannot bring a civil action under a federal penal statute unless the statute grants a private right of action. *See Charles v. Freedman*, No. CV H-22-913, 2022 WL 2223041, at *2 (S.D. Tex. June 21, 2022) (citing *Zastrow v. Houston Auto Imports Greenway Ltd.*, 789 F.3d 553, 559 n.3 (5th Cir. 2015)).

18 U.S.C. § 1028A makes it a crime to use without authorization another person's identification "during and in relation to" certain felony violations. 18 U.S.C. § 2261 makes it a

crime to commit domestic violence while traveling in interstate commerce. 18 U.S.C. § 2340A makes it a crime to commit torture while outside of the United States. None of these statutes create a private right of action. The claims are dismissed.

A similar analysis applies to Sylvester's claim under the Thirteenth Amendment to the United States Constitution. The Thirteenth Amendment does not provide a direct cause of action. *Doe v. Siddig*, 810 F. Supp. 2d 127, 135 (D.D.C. 2011) ("Courts in this Circuit have consistently held that there is no private right of action under the Thirteenth Amendment."). "Congress has already brought its institutional competence to bear on the matter by crafting an appropriate statutory right of action in the form of [18 U.S.C.] Sections 1584 and 1595." *Id.* at 135–36. Even if such a cause of action existed, it would not extend to Sylvester's allegations, which are "devoid . . . of state action or class-based discrimination." *Id.* at 136 (quoting *Bhagwanani v. Howard Univ.*, 355 F. Supp. 2d 294, 302 (D.D.C. 2005)).

Sylvester also asserts several claims under chapter 77 of title 18 of the United States Code, titled "peonage, slavery, and trafficking in persons." Chapter 77 establishes criminal offenses, but unlike the criminal statutes discussed above, it also creates a private right of action. Section 1595 permits "[a]n individual who is a victim of a violation of this chapter [to] bring a civil action against the perpetrator (or whoever knowingly benefits . . . financially . . .) in an appropriate district court of the United States and [] recover damages and reasonable attorneys fees." 18 U.S.C. § 1595(a). But, as explained below, Sylvester's chapter 77 claims fail because they are precluded by earlier court rulings under the doctrine of *res judicata*, and because she fails to state a claim upon which relief can be granted.

11

**B.     Res Judicata**

Nilsson argues that the court rulings in the divorce and protective order actions in Texas state court preclude the claims Sylvester makes in this case. (Docket Entry No. 7 at 3). The court agrees.

"In determining whether res judicata bars a claim, federal courts 'give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'" *Jackson v. Deutsche Bank Tr. Co.*, 583 F. App'x 417, 417–18 (5th Cir. 2014) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S. Ct. 892, 896 (1984)). The elements of *res judicata* under Texas law are: "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims that were raised or could have been raised in the first action." *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007). The third element is met if the second action "arises out of the same subject matter of a previous suit and which through the exercise of diligence, could have been litigated in a prior suit." *Barr v. Resolution Tr. Corp.*, 837 S.W.2d 627, 631 (Tex. 1992).

"Dismissal on the pleadings is appropriate if the *res judicata* bar is apparent on the face of the pleadings." *Stevens v. Nationstar Mortg., L.L.C.*, 765 F. App'x 105, 106 (5th Cir. 2019). The court may consider public documents from the prior proceeding. *See Van Duzer v. U.S. Bank Nat. Ass'n*, 582 Fed. App'x. 279, 283 (5th Cir. 2014).

The first element of *res judicata* is established. The 280th court entered a final protective order in August 2019, (Docket Entry No. 7-3 at 9), and the 311th court issued a final judgment in the divorce action in October 2023, (Docket Entry No. 7-9). The second element is also established; the parties in this case are the same as the parties in the state court proceedings.

12

Sylvester argues that the third element is not established because her human trafficking claims "could not be examined" in state court and "were not adjudicated and resolved . . . despite diligence." (Docket Entry No. 8 at 5). She also argues that her breach of contract and fraud claims are not precluded because they were not litigated in the state court proceedings. (*Id.* at 5–6). She argues that her claims under chapter 77 are not precluded because the state court was "bounded to Texas civil code and procedures and the claims under 18 U.S.C. 1595 creates a private right of action in US Federal Court." (*Id.* at 6). None of her arguments is persuasive.

Sylvester did raise her breach of contract claim in the state court proceedings. She asserted that Nilsson had not paid her what he had promised in the Marital Agreement and moved for an order requiring him to do so. (Docket Entry No. 7-8). The 311th court rejected her claim when it entered the final divorce decree without referencing the Marital Agreement or awarding Sylvester any of the benefits she had sought under it. (Docket Entry No. 7-9). The final divorce decree denied "all relief requested in this case and not expressly granted." (*Id.* at 34).

Sylvester is correct that her federal trafficking, torture, and slavery claims were not raised in the state court proceedings, but that is immaterial because those claims could have been raised. Sylvester made the same factual allegations in state court that underly her claims in this case. She alleged that Nilsson was violent and that she and her children were victims of family violence. (Docket Entry Nos. 7-1, 7-2, 7-5, 7-6, 7-7). The 280th court found that Sylvester's allegations were untrue, (Docket Entry No. 7-4), and the court of appeals affirmed, *Sylvester*, 2021 WL 970924. The court could not enter judgment in favor of Sylvester on her claims in this case without contradicting the state courts' findings that Nilsson had not committed family violence and that Sylvester had.

Sylvester's argument that 18 U.S.C. § 1595 gives federal courts exclusive jurisdiction over civil claims under chapter 77 is foreclosed by *Tafflin v. Levitt*, 493 U.S. 455, 464, 110 S. Ct. 792, 798, 107 L. Ed. 2d 887 (1990). In that case, the Supreme Court held that state courts have concurrent jurisdiction over civil RICO claims. *Id.* The RICO private right of action is substantially identical to the chapter 77 private right of action. Both provide that litigants "may" sue in an "appropriate" United States district court. *Compare* 18 U.S.C. § 1964, *with* 18 U.S.C. § 1595. Civil claims under chapter 77, like civil RICO claims, are not "offenses against the laws of the United States." 18 U.S.C. § 3231. The "deeply rooted presumption in favor of concurrent state court jurisdiction over federal claims" controls. *Atl. Richfield Co. v. Christian*, 140 S. Ct. 1335, 1351, 206 L. Ed. 2d 516 (2020) (quotation marks and quoting reference omitted).

The one factual allegation that can perhaps be considered unique to this case is the allegation that Nilsson lured Sylvester into the United States with false promises in the Marital Agreement—the apparent basis for Sylvester's trafficking and fraud claims. However, as explained in the next section, Sylvester fails to state a claim for trafficking and fraud. And, in any event, Sylvester's trafficking claim, at least, is barred by *res judicata*.

A defendant violates 18 U.S.C. § 1590's trafficking prohibition when he or she "knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of [] chapter [77]." Common elements of Sylvester's chapter 77 claims are the state of being held in involuntary servitude or slavery and Nilsson's knowledge or intent to hold her in that state. *See* 18 U.S.C. §§ 1583, 1584, 1588, 1589. To support these elements, Sylvester relies on factual allegations that the state courts rejected: that Nilsson, once in America, was violent and abused her and the children. So, as with Sylvester's other claims, the court could not enter judgment in her favor on the trafficking claim without contradicting the state courts' findings.

Sylvester's claims are precluded by the doctrine of *res judicata*.

### C.    Failure to State a Claim

Sylvester's chapter 77 claims also fail because she fails to state a claim upon which relief can be granted. The same is true of her fraud claim, which is subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). Sylvester also fails to state a claim with respect to her other common-law causes of action.

#### 1.    The Chapter 77 Claims

Without the precluded violence allegations, Sylvester's complaint amounts to little more than a general allegation that "she had hoped for a different experience in the United States," which is insufficient to state a claim for trafficking, slavery, or involuntary servitude under chapter 77. *Muchira v. Al-Rawaf*, 850 F.3d 605, 621 (4th Cir. 2017), *as amended* (Mar. 3, 2017); *cf. United States v. Toviave*, 761 F.3d 623, 629 (6th Cir. 2014) ("[W]e should not—without a clear expression of Congressional intent—transform a statute passed to implement the Thirteenth Amendment against slavery or involuntary servitude into one that generally makes it a crime for a person *in loco parentis* to require household chores, or makes child abuse a federal crime.").

Sylvester does not allege that she was "subjected to squalid or otherwise intolerable living conditions, so as to reasonably lead her to believe that she was effectively imprisoned in her [] situation." *Muchira*, 850 F.3d at 620–21. Her allegation that she was "held against her will and confined" is conclusory, (Docket Entry No. 1 at 2), and undermined by the fact that the couple physically "separated in December 2018" and that Nilsson initiated divorce proceedings, (Docket Entry No. 1-1 at 8). Sylvester does not allege specific facts showing that she was physically restrained from leaving the apartment she shared with Nilsson. *See Muchira*, 850 F.3d at 620–21 ("Muchira was initially provided with a private, one-bedroom apartment, with unfettered ability

15

to come and go from her apartment. . . . Muchira had an unobstructed ability to walk away at any time, and to any number of close-by public places[.]"); *Headley v. Church of Scientology Int'l*, 687 F.3d 1173, 1177 (9th Cir. 2012) (rejecting forced labor claims where the alleged victims were physically able to walk away at any time and successfully did so "the first time [they] tried"); *Toviave*, 761 F.3d at 630 (noting that typical "victims in [] other [chapter 77] cases were denied almost all contact with the outside world"); *compare Martinez v. Calimlim*, 651 F. Supp. 2d 852, 856 (E.D. Wis. 2009) (plaintiff stated a claim for forced labor with allegations that defendants "enslaved her, i.e., forced her to work for them for little or no pay, concealed her presence in their home and severely curtailed her access to the outside world").

Sylvester alleges that she was afraid to flee the situation for fear that Nilsson would have her deported, but courts have held that threats of deportation do not support an involuntary servitude claim. *See United States v. Shackney*, 333 F.2d 475, 486–87 (2d Cir. 1964) ("While a credible threat of deportation may come close to the line, it still leaves the employee with a choice, and we do not see how we could fairly bring it within § 1584 without encompassing other types of threat, quite as devastating in the particular case as that of deportation may have been to the Oros', whose inclusion would make the statute an easy tool for blackmail and other serious abuse.").

Sylvester alleges other types of abuse and torment—apart from the threat of deportation and the precluded allegations of violence—to support her claims. For example, she alleges that Nilsson "threaten[ed] legal process to gain immunity of managing custody and access of children." (Docket Entry No. 1 at 2). She alleges she was subjected to emotional and psychological abuse, "financial abuse," "reproductive exploitation," "involuntary servitude," "used for child thriving," "domestic labour and slavery," "depriv[ed] of [her] basic psychological needs, [her] freedom,

16

mobility, [her] sense of belonging, love and the ability to have a voice." (*Id.* at 2; Docket Entry No. 1-1 at 4). But these conclusory allegations do not state a claim under chapter 77. *See John Roe I v. Bridgestone Corp.*, 492 F. Supp. 2d 988, 1017 (S.D. Ind. 2007) (disregarding as conclusory allegations that plaintiffs "were placed in fear for their lives, were deprived of their freedom, and were forced to suffer severe physical and/or mental abuse designed to coerce them into working on the Firestone Plantation").

### 2. The Fraud Claim

Sylvester alleges that Nilsson entered the Marital Agreement without intending to perform, in order to lure her into the United States. Texas law recognizes a cause of action based on a "promise of future performance . . . made with no intention of performing at the time it was made." *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). "However, the mere failure to perform a contract is not evidence of fraud." *Id.* The plaintiff must establish that the defendant "made representations with the intent to deceive and with no intention of performing as represented." *Id.* (citation omitted). Rule 9(b)'s heightened pleading standard further requires the plaintiff to "set forth *specific facts* supporting an inference of fraud." *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994). "[S]imple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b)." *Id.*

Sylvester fails to state a fraud claim under this standard. She alleges, in conclusory fashion, that Nilsson "defrauded" her because the Marital Agreement had "unmet misleading promises." (Docket Entry No. 1 at 2). She does not allege facts that could reasonably be the basis for an inference that when Nilsson made the promises about his future actions, he did not intend to keep them.

17

### 3. Other Common-Law Claims

Sylvester asserts claims for quasi-contract, unjust enrichment, intentional misrepresentation, hostile environment, "irreparable injury," and negligent infliction of emotional distress. (Docket Entry No. 1 at 4–5). These claims are dismissed because Sylvester does not explain how the facts alleged support the elements of the causes of action. Further, Texas does not recognize a cause of action for negligent infliction of emotional distress. *See Tex. Farm Bureau Mut. Ins. Cos. v. Sears*, 84 S.W.3d 604, 612 (Tex. 2002).

## IV. Conclusion

Many of Sylvester's claims are based on sections of the criminal code that provide no private right of action. The claims that are supported by a right of action are precluded by the doctrine of *res judicata*. To the extent Sylvester alleges claims not precluded by *res judicata*, she fails to state a claim upon which relief can be granted. Nilsson's motion is granted, (Docket Entry No. 7), and Sylvester's claims are dismissed. The dismissal is with prejudice because the *res judicata* bar makes further amendment futile. A separate dismissal order will follow.

SIGNED on March 15, 2024, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge